Good afternoon. Illinois Appellate Court First District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding. Case number 1-8-1266, People v. Joey Jones. Good afternoon. I'm Justice Michael Hyman. First, I want to apologize for being a few minutes late. I had some difficulties with my sound, but we're all set. Also, I'm going to be presiding this afternoon. Our presiding judge, Justice, who's on this case, Justice Walker, is unable to join us. But as you know, everything is recorded audioly so that you can listen to it. And he will listen to the tape after the argument. And with me is Justice Dan Pierce. Would you each please introduce yourselves? Good morning, Your Honors. Lauren Bowser from the State Appellate Defender on behalf of Joey Jones. Good afternoon. Assistant State's Attorney Tyler Cox on behalf of the people of the state of Illinois. Okay, so you each have 20 minutes. Ms. Bowser, you can reserve some time for rebuttal. We conduct ourselves as if we're in the courtroom. We will interrupt you and ask you a question and complete your answer because we're on video. It's harder. We don't want to run over each other, but we want you to know that we do have a question pending. So how many minutes do you want for rebuttal? Three minutes, please. Three minutes is fine. And you may begin. Your Honors, this morning, I would like to discuss the Lopez unreasonable self-defense issue as raised in issue one and two of the brief and the Batson issue raised in issue three of the brief. But I'd be, of course, happy to answer questions about the sentencing issue as well. I'm turning first to the Lopez unreasonable self-defense issue. Illinois Supreme Court case law precludes an attempt murder conviction when the defendant acted with the belief he was defending himself. The court's decisions in Reagan and Lopez make clear that a defendant acting in imperfect self-defense lacks the requisite mental state under the confluence of the first degree murder and the attempt statutes. As the court laid out in these cases, a defendant who's intending to defend himself, even if unreasonably, would not have the intent to unlawfully kill. He would have the intent to engage in self-defense, which is not a crime. Didn't the jury have an opportunity to hear that argument? The jury in this case was only given the opportunity to consider whether he acted self-defense, reasonable self-defense. They weren't instructed on whether he perhaps held a sincere belief in the need to defend himself that was unreasonable under the circumstances. Right, because the Illinois Supreme Court has not said that that's permissible. The Illinois Supreme Court has said that attempt first degree murder convictions cannot stand when an individual acts in reasonable self-defense. That's, again, from Lopez and Reagan. The court looked at the specific language in the attempt statute, which plainly requires a mens rea to commit a specific offense and said that a defendant acting in self-defense cannot have the requisite mental state to commit attempt murder. I'm aware that this court has in Guyton looks to the fact that since those decisions in Lopez and Reagan, the legislature has amended the to mitigate sentencing if he can show he acted in provocation. And this court in Guyton looked at the fact that the legislature did not create a similar mitigation for defendants who acted in reasonable self-defense and concluded that that represented an affirmative choice by the legislature not to allow that unreasonable self-defense cases to be mitigated. However, Guyton didn't really grapple with the fact that under Lopez, if a defendant doesn't have a mental state to commit the underlying offense, there's nothing to mitigate. Lopez said that acting in self-defense, even if unreasonable, has the effect of defeating the mens rea for the crime entirely. Without the requisite mens rea, there's no crime. There would be no crime to mitigate. And we know that this is what the legislature's inaction on that mitigating factor represents. As cited in the briefs, a law review written by Justice Tooman, who was a member of the clear commission that recommended these legislative changes, stated that the commission understood Lopez to establish that a defendant who actually believed he was acting in self-defense should be acquitted of persuasive secondary authority that this court can consider. And of course, finding that a defendant who acts unreasonably in self-defense is not guilty of attempt murder isn't a windfall or defendants don't get off scot-free. It's simply they haven't the requisite state. Has the legislature decided that where defendant has decided not to provide a mitigating circumstances for attempted first degree? Yes. Okay. So we have to follow that, don't we? You're saying that because the mitigation does exist with respect to first degree. We also have to follow it back to attempt murder. Has decided not to provide any mitigating circumstances for attempted first degree murder. He was charged with attempted first degree murder. They don't need, they don't need, it's impossible to provide mitigation when the same fact would actually preclude the conviction. And that's the thing about Lopez and Reagan show us. The defendant who acts in perfect self-defense doesn't have the men's right to commit the crime. There's no crime to mitigate. So the court has held that attempt second degree murder doesn't rather what follows is that there must be an acquittal. A defendant who acts unreasonable self-defense and shoot someone would be guilty like the jury found here of aggravated battery of a firearm. But under the very specific language in our attempt statute, as the court stated in Joe Lopez and Reagan, he wouldn't have the specific intent under the specific language of attempt statute in Illinois to be found guilty of attempt first degree murder. Testimony here of his unreasonable, reasonable belief in self-defense was his own testimony, correct? Correct. And the jury could reject his claim that he needed to defend himself, whether his belief is reasonable or not. Absolutely. But the jury here wasn't even given the option to weigh the competing versions of events. I mean, the evidence establishes, there's not a lot of dispute that these numbers didn't know each other. They were standing in the parking lot. They were both there to see Mr. Jones's father. Clearly some words were exchanged and looks were exchanged. Both the victim and Mr. Jones testified and both said the other was giving me the hard look. So we don't know exactly what happened, but the jury should have been able to weigh whether it believed that Mr. Jones truly felt threatened, even if it was unreasonable to feel threatened under the circumstances. That is something the jury should have been allowed to weigh. We saw a video. And this whole situation seems, according to my watch, it's about three seconds from the time of the conversation, the time there's a bullet in the back of Mr. Payne's head, isn't it? Yes. And Mr. Payne didn't seem to be moving towards any car. It was Jones who moved towards the car to get his gun. I mean, I think both parties, I think Mr. Payne indicated he was walking back to his car. I thought it did. I haven't watched it in a while, but I thought I recalled him turning. We have three seconds. So that would be something the jury could consider. It was unreasonable to be afraid. But if they truly believed he had a genuine belief, I mean, that's what a reasonable self-defense is. Genuinely held, but unreasonable under the circumstances belief. They certainly think to get an instruction on a defense, only slight evidence is required. And we do have slight evidence here such that had counsel sought this instruction, it would have been warranted under the facts of this case. And again, I would point out that, you know, an acquittal on attempt to murder is hardly Mr. Jones walks off scot-free. And the jury also convicted him of aggravated battery with a firearm. And that's what we're asking for this court to do is sentence. Finally, you should be sentenced on that offense, which more accurately reflects the mental state in this case. If the jury felt that he had an unreasonable belief in self-defense and acquitted him on the attempt murder, why wouldn't they acquit him on the aggravated battery? Because the specific reason why intent to commit an aggravated battery, he was acting in self-defense, but it was an unreasonable belief. Well, because the specific reason why he can't, why he can't have the mental state for an attempt murder conviction here is because again, the Reagan court and the Lopez court the specific intent requirement of the temp statute. So, you know, it's the attempt, it's the wrinkle that this is an attempt crime that has a separate and additional mens rea that compels that result. The shooting, you know, the aggravated battery doesn't involve that tent statute. I understand. Thank you. Um, so, um, let's see, returning, let's try to sort of further questions on that issue. I'm going to turn to the Batson claim. Um, excuse me, this court should remain for second stage Batson proceedings where the evidence induced at the Batson hearing demonstrates a reasonable inference of purposeful discrimination and where the judge's analysis drifted into the second phase, um, by considering potential race neutral reasons for the strike. Here, defense counsel made a Batson objection, presented evidence that the state had used all three of its peremptory challenges on black near persons. And the threshold for making out a prima facie Batson claim is not very high. Further, the exclusion of even one juror based on race is a violation of Batson. So if we review the totality of the circumstances during the jury selection in this case, it gives rise to an inference of purposeful discrimination. Mr. Jones is black. The state used strikes 100% of its peremptory challenges to exclude three black men or persons. Um, well, Batson challenges do require the court to consider more than simply the number of, um, stricken jurors here. Those numbers establish both pattern of strikes, um, 100, you know, 100% of the strikes were used against black men or members. And our court has, um, the Supreme Court has described these two factors as very relevant factors, which strongly suggest an inference, um, of purposeful discrimination. Also in this case, those three excluded black jurors were a heterogeneous group of individuals whose shared characteristic was race. The judge said the opposite, didn't he? He, he did. He said, I think it's unclear. The record says androgynous. Um, I think maybe he said homogenous, but he did say they're all different when he made this ruling. So I'm not, I'm sorry. Yeah, that's what he said. Yeah. So it's not clear if he was misapplying the factor or just discounting the factor, but you know, we look at these, these jurors and they, they ranged in the excluded jurors. They ranged in age, um, gender, different education levels, different employment statuses, different homeownership statuses, parenthood statuses. They have varied experiences with being victims of crimes, um, with their knowledge of police officers. Um, so, you know, and also as detailed in the brief, they, the excluded jurors shared a lot of characteristics with several potential jurors who had been in panels. So looking at, you know, these comparisons, um, the three excluded black potential jurors were themselves a diverse group, but who each also shared, um, characteristics in common with the panel jurors. And that is another factor that leads to an inference of discrimination here. Did they, did the trial court find that there was a prima facie case made by the defendant? He's not. Um, and that's of course what we're challenged. So what do you, what do you do with that? So we're arguing that that finding based on the totality of the circumstances was against the manifest weight of the evidence. No, no. Did he, did he rule that there was not a prima facie case or did he simply not rule that there was or wasn't. He ruled there was not a prima facie case. Okay. And then, then segue into some analysis of why he thought there wasn't purposeful discrimination. Um, I think, you know, he did kind of indicate that he was looking at the questions asked, which is sort of conducting this comparative analysis. And he said, then he suggested that, you know, he could come up with some of these race mental reasons on his own without having to ask the state, which, um, of course is a second Batson, um, question for the second phase of Batson, not something at the first phase. So that's, you know, the basis for arguing that the proceedings have drifted here and properly into the second stage. Um, the courts have repeatedly made clear that these, these stages of Batson need to be kept separate. Um, so are you asking us then to reverse and send it back for a second stage? Correct. Correct. Um, and that would require us to find that his ruling that there was no prima facie case was against the manifest way, the manifest way of the evidence. Yes. And this court can look at the totality of the circumstances to make that finding. Um, I would point out in the seat's brief, it doesn't really substantively dispute that these factors weigh in Mr. Jones's favor. Um, maybe argue that the objection was insufficient or, you know, that the court didn't have a duty to consider all of these factors. Um, that is completely incorrect. I mean, as the courts have repeatedly made clear, um, all, all of the relevant factors of jury selection need to be considered by a judge in ruling on a Batson motion. Um, the U.S. Supreme court has re also reiterated that in criminal trials, the primary job in 14 enforcing Batson rests first and foremost with the trial judges and that they possess the primary responsibility to enforce Batson and prevent racial discrimination from seeping into the selection process. So the judge did have a factors and we have a record with respect to consider. Let me interrupt you. I'm sorry. When you say consider all these factors, are you saying considering all these factors in making the determination of whether a prima facie case has been established? Correct. So the analysis that the judge Coughlin, um, went into was necessary for him to decide whether a prima facie case was made. Correct. So you're not saying that he was wrong considering all these things. You're just saying his conclusion was correct. Right. He did consider these things as he's required to do. Um, and as I pointed out, they were in favor of a finding of racial discrimination. Yet he concluded there was not. And so I think, you know, as far as you know, again, the courts have stressed that judges facing these Batson, um, Batson objections need to consider all relevant circumstances that may raise an inference. Um, so again, here, I just asked his court to find that, um, his he did that, but his ruling was against the manifest way of the evidence. Um, um, see, yeah. Um, so I'll reserve the rest of my time for rebuttal unless your honors have other questions. Um, we would ask, I would ask this court to find that, you know, the ruling was against the manifest way of the evidence and that, you know, alternatively where the court did start to drift into, you know, trying to suggest potential race, you know, race and for reasons he improperly collapsed Batson and drifted improperly into the second stage. Even if we're real, he didn't collapse it. Uh, your argument still steam still stands. Yeah. That well, that whether he collapsed or not, it really doesn't matter to our decision. Right. I mean, either, either of those errors, I believe would require a second, a remand for second stage Batson proceedings. Let's just say that the first, he was wrong on the first, it doesn't matter whether he collapsed definitely alternative arguments, but yes, just being, just being wrong on the first would be enough to remain for further Batson proceedings. Mr. Cox. Thank you, your honor. May it please the court assistant state's attorney, Tyler Cox on behalf of the people of the state of Illinois, urging this court to affirm the defendant's conviction and sentence for attempt first degree murder where the people prove the defendant guilty beyond a reasonable doubt. Defendant received effective assistance of counsel. The circuit court did not air in finding that the defendant did not present a prima facie case of discrimination. And the defendant's sentence was entirely proper. First, the defendant was proven guilty of attempt first degree murder beyond a reasonable doubt. Whereas actions of firing a gun at the back of the victim's head demonstrated his intent to kill. And there is no basis in law or fact for the defendant's claim that his alleged unreasonable belief in the need for self-defense somehow exonerates his guilt. First, the people overwhelmingly proved the defendant's intent to kill where the defendant clearly shot at the back of the victim's head. This court has repeatedly and consistently held that firing a gun at an individual is enough to establish the intent to kill. And in this case, that was clearly present. The jury rejected the defendant's claim of self-defense and all the light most favorable to the people overwhelmingly established the defendant's guilt for attempt first degree murder beyond a reasonable doubt. Furthermore, there is no basis in law or fact for the defendant's claim that his alleged unreasonable belief in the need for self-defense somehow negates the crime of attempt first degree murder. The law is clear. Such an unreasonable belief is not a valid defense to the crime of attempt first degree murder. The offense of attempt second degree murder simply does not exist in Illinois, as Lopez made clear. And contrary to defendant's suggestion to ignore it, People v. Guyton is directly on point and dispositive here and adequately addressed Lopez as well as the legislature's intent in changing the sentencing anomaly, but not ultimately changing the elements of attempt first degree murder or creating the crime of attempt second degree murder. Furthermore, even if this court were to somehow entertain the defendant's suggestion that his alleged unreasonable belief in the need for self-defense could somehow negate his guilt for attempt first degree murder, the defendant's actions did not demonstrate any belief in the for self-defense. As your honor pointed out, the defendant went back to his car. However, he did not drive away even though he was able to get his gun and return to the victim and shoot him. Furthermore, is there anything that I mean, again, the jury saw the video and it didn't show as far as I could see Mr. Payne moving towards his car. I mean, by the time it went, again, three seconds elapsed approximately between the time the conversation ended and there was a bullet in the back of Mr. Payne's head. You're correct, your honor. Yes. And the jury obviously saw the video and simply put, there was no evidence of defendant's belief in the need for self-defense beyond his own testimony. So based on this evidence, the fact finder, the jury in this case found the defendant guilty and viewing the evidence in light most favorable to the people, we would ask you to affirm the defendant's conviction for attempt for a supreme murder. Consequently, despite defendant's argument, the defendant cannot show that his counsel is ineffective in failing to request a jury instruction on an unreasonable belief in the need for self-defense where such an instruction would not accurately reflect the law. Furthermore, counsel did successfully ask for an instruction on self-defense. The jury simply rejected this proposition. The defendant's conviction for attempt first degree murder should be affirmed. Next turning to the Batson claim, the defendant has failed to properly preserve his Batson claim for appeal. And regardless, the circuit court did not improperly collapse the Batson procedure and was not manifestly erroneous in finding that the defendant did not make a prima facie case of racial discrimination. Defendant had forfeited his claim because he did not object to the circuit court's procedure. Let's say that we don't agree with that. We get to the merits of the issue. What's your response? Absolutely, your honor. The circuit court's finding that the defendants did not present a prima facie case of racial discrimination was not manifestly erroneous. It was the defendant's burden to present facts and any other relevant circumstances which raise an inference that the state challenged the jurors simply because they were African-American. However, the defendant in this case only pointed to the number of peremptories used on African-American veneer persons. The Illinois Supreme Court has made clear that just pointing to the mere number of challenges used on African-American veneer persons will not establish a prima facie. The judge has to go through what Williams set forth as a seven factor test, right? Correct. However, it is the defendant. We then go through that seven factor test to determine whether the decision of the court was correct. I don't believe you can on the record in front of us, your honor. Why not? There's just simply not enough evidence. For example, the fourth factor, the level of African-American representation in the veneer as compared to the jury. There's not enough evidence because the defendant did not. Let's say you agree with you. Okay, so that's one. There's still six left. How about number one? The first one is racial identity between the defendant and excluded potential jurors. That we know. That we do know, your honor. And that favors Jones, doesn't it? Correct. Okay, how about number two? A pattern of strikes against potential jurors of the alleged racial group. I think we have that one. We do know that all three were used on African-American. Right, so that's two for Jones. Third is a disproportionate use of preemptatory strikes against members of the alleged group. They were 100% black, so that would be for Jones. Yes. And the one you mentioned, number four, which is we can't tell at all, so that we can't consider it. The fifth one is the prosecutor's questions and statements during voir dire or exercising preemptory strikes. They didn't say anything. I don't think they said anything one way or the other, so that favors the state. You are correct, your honor. All right, number six. Determining whether the stricken jurors were a heterogenerous group sharing race is their only common characteristic. Now, what's your response to that one? As your honor pointed out during defendant's argument, the circuit court in this case, in its subsequent, not its initial ruling, but its subsequent explanation, did indicate that, well, he said androgynous, but he did make a finding as to that one, concluding that it weighed in favor of the state, weighed in favor of not finding a prima facie case of discrimination. I know, but is that, I mean, are there, what are the differences? I mean, the, I mean, doesn't that one, if the group, as counsel mentioned, that group shared many of the same characteristics as people on the jury, the three individuals are stricken, and you look at the jury, there is lots of overlap there. Is that true? That is correct, your honor. However, obviously we don't know any kind of other race, social reasons, because it did not move to that step yet. Well, that's the question, and it's a low hurdle. You would agree to that? Yes, it has been held that this prima facie case is not a high burden, correct? So the question is whether we go to the second stage, and if the sixth factor, it seems to me, would point more towards Jones' favor when you look at the characteristics of the jury and the characteristics of the preemptatory challenged three jurors. But, and you don't disagree that they're, they have similar characteristics? I would agree, Judge, there are some similar characteristics. However, obviously the trial court thought differently. Right, and then in the last factor, I guess that doesn't, that would favor the state, I would assume. Race of the defendant, witnesses, and victim, they're all black. All African American, correct? So according to my counting, I get one, two, three, four in favor of Jones, two in favor of the state, and one we couldn't tell. And you say that on that basis we should affirm? Correct, Judge, it is not a manifestly erroneous for the circuit court to weigh those factors and find, based on the evidence presented by the defendant, because it was his burden, that he did not present a prima facie case of discrimination. And did he request the defendant to explain why he believed he had a prima facie case? He, well, initially the defendant did make the bats an objection. Well, he just made the objection, right? Correct, he only pointed to the numbers. The people briefly responded that they, there were already two African American veneer persons seated on the jury, which obviously... My point is, the judge didn't give the defendant an opportunity, or the defendant didn't take an opportunity to explain why he did establish a prima facie case, right? He didn't say anything other than three blacks have been excluded, and they're all black. That is correct, your honor. Right. So at that point, the judge said, I don't think so. I don't think that's a prima facie case. Is there any obligation on the defendant to articulate reasons why they think they established a prima facie case? It is the defendant's burden to bring certain circumstances to the judge's evaluation of the different factors and different circumstances that would go into establishing a prima facie case. And in this case, it was simply not enough to establish a prima facie case. Included in those surrounding circumstances, obviously, were the fact that the two African American veneer persons had already been sat on the jury, and the Illinois Supreme Court has held that this tends to weaken the basis for a prima facie case of discrimination. But that doesn't undo it. That doesn't mean that's not a Batson violation, does it? No, no, it's not. It's another factor to consider. But still, it seems as we went through it, there's more factors that favor Jones than favor the state. And so, I mean, since it's a low burden to meet, shouldn't the judge have given the opportunity for the second stage? I don't believe so. Obviously, there's no magic number of factors that have to weigh in favor of one side or the other. It's up to the judge. And he was not manifestly erroneous in making his determination at the time of the Batson objection. So we would ask you to affirm the defendant's conviction for attempt to first degree murder. And I know defendant did not touch on it here, but we would ask you to affirm the sentence as well, where that was firmly within the statutory range for attempt first degree murder. If there are no further questions, we ask you to affirm the defendant's conviction and sentence for attempt first degree murder. Thank you. I would just like to make two points about the Batson issue. And both of these come from the Illinois Supreme Court's decision in Andrews that was cited in the briefs. The court in Andrews made clear that the standard of manifestly erroneous isn't, we look at the judge's decision and decide it's against the manifest weight of the evidence. It's less deferential than an abuse of discretion standard. So when the state was arguing, the judge here didn't manifestly err. We don't give deference to the decision. We look at the totality of the evidence and find that the ruling was against the weight of that, as the court discussed in Andrews. It's a less deferential standard than deferring to the trial judge's findings. We look at the evidence anew. And Andrews also pointed out that two of the most important factors are the pattern of strikes and whether they were used disproportionately. They couldn't be more disproportionate here. All three strikes were used against a Black mayor person. So those are, in Andrews, the court described those as very important factors. So I would just ask, even if we're counting the factors, these are factors that are very important and weigh very heavily in Mr. Jones's favor. Accordingly, we do ask this court to remand for further Batson proceedings. And of course, on the first issue, either reverse Mr. Jones's conviction and ran for resentencing on the aggravated battery with a firearm, or remand for a new trial where the jury can be instructed on how to properly use unreasonable belief in self-defense in the context of a term murder. Thank you to both of you for your arguments and for the briefs. We'll take this case under advisement. Justice Walker will listen to the arguments and appreciate both of your time. Thank you very much.